Robert I. Wright, Petitioner *v.* Commonwealth of of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

118

Argued December 8, 1979, before Judges ROGERS, DiSALLE and CRAIG, sitting as a panel of three.

*John McCrea, III,* with him *McCrea & McCrea,* for petitioner.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Gerald Gornish,* Attorney General, for respondent.

OPINION BY JUDGE DiSALLE, August 15, 1979:

This is an appeal by Robert I. Wright (Claimant) from a denial of unemployment compensation pursuant to Section 402(e) of the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802 (e), the willful misconduct section.

Claimant worked for the Franklin County Prison (Employer) as a guard for approximately four years, until his discharge on December 19, 1975. During his

tenure there, an inmate escaped, and later killed a policeman. Claimant sent the following letter to a local newspaper, criticizing the Franklin County Prison Board and the warden:

An open letter to the citizens of Franklin County:

Once again you have been taken and this time it resulted in the loss of a human life.

What does it take to wake you up?

To be very brief and to the point, it's a sorry bunch of politicians we have when they place the value of money above that of a human life.

The killing of the Hagerstown policeman could have been avoided had it not been for that very fact.

Gutless politicians and the quest for money, power and prestige go hand-in-hand.

The officers of the Franklin County Prison were held responsible for the breakouts by Merle Unger and punished as such.

I can only come to the conclusion that irresponsibility on the part of the Franklin County Prison Board and the warden led to this untimely death.

Therefore, I now hold the Franklin County Prison Board and the warden responsible for the death of Patrolman Donald Kline and they should be punished by being dismissed, or resigning from the office they now hold.

The 'Firing Eight' have now graduated to bigger things.

ROBERT WRIGHT

R.R. 1

Orrstown

Prison employe for four years.

Following publication of the letter, Claimant was discharged by his Employer. He applied for and was

denied benefits on the grounds that his criticism constituted willful misconduct.

Claimant argues that a denial of benefits violates his right to free speech as guaranteed by the First Amendment of the United States Constitution. We agree. In *Pickering v. Board of Education,* 391 U.S. 563 (1968), a public school teacher wrote a letter to the editor of a local newspaper, criticizing the way in which the Board of Education and the school superintendent handled proposals to raise additional revenue. In holding that dismissing the teacher violated his free speech rights, the Supreme Court established a test intended to balance "the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568. Given the obvious public interest in matters pertaining to the raising of revenues for school districts, and given the Court's view that since the statements were not directed towards anyone with whom the teacher would be in daily contact they would neither impede the teacher's classroom performance nor cause a breakdown in the employment relationship, the Court held that the teacher's interests outweighed those of the school board.

An application of *Pickering, supra,* to the case at bar compels a similar result. Certainly none will deny the interest of the public in prison security and in the implementation of procedures designed to prevent inmates from escaping. The Unemployment Compensation Board of Review, however, argues that there is a much closer working relationship between the letter writer and employer here than in *Pickering, supra,* and that unlike the teacher's comment in *Pickering,* Claimant's public criticism of Employer has seriously undermined the employment relationship.

We disagree. We find nothing in the record evidencing so disruptive an effect of the letter as would outweigh Claimant's substantial right to speak freely on matters of public importance. Nowhere is there anything indicating the frequency of Claimant's working contact with the warden and the Prison Board or demonstrating that the letter would have an adverse impact on the functioning of the Franklin County Prison.[1] Moreover, here the employment relationship has been terminated, and we are concerned only with a claim for unemployment compensation. We hold that Claimant is entitled to such benefits.

ORDER

AND Now, this 15th day of August, 1979, the order of the Unemployment Compensation Board of Review, denying benefits to Robert I. Wright, is hereby reversed, and the case is remanded to the Bureau for computation of benefits.

---

[1] We note in passing that the Supreme Court has afforded first amendment protection to public officials making statements on matters of public concern, even where those statements involve their nominal superiors. *Garrison v. Louisiana*, 379 U.S. 64 (1964) ; *Wood v. Georgia*, 370 U.S. 375 (1962). In *Garrison*, a district attorney made statements about the judges before whom he regularly appeared, while in *Wood*, a county sheriff criticized three local judges.