Clyde A. Simpson, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent. The Babcock & Wilcox Company, Intervenor.

Argued February 5, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Claude V. Falkenhan,* for petitioner.

*Charles Hasson,* Associate Counsel, for respondent.

*Richard I. Thomas,* with him *Brian J. Dougherty, Thorp, Reed & Armstrong,* for intervenor.

OPINION BY JUDGE WILLIAMS, JR., September 17, 1982:

Clyde A. Simpson (claimant) has appealed from an order of the Unemployment Compensation Board of Review (Board) denying him benefits for a one-week period that he was suspended from work. The basis for the Board's order was its conclusion that the claimant had been suspended for behavior amounting to "willful misconduct," under Section 402(e) of the Unemployment Compensation Law (Law).[1]

On June 2, 1980, claimant Simpson was suspended from his employment at the Tubular Products Division of the Babcock & Wilcox Company (Company); the period of actual suspension was to include the dates June 3 through June 9, 1980. The reason for the claimant's suspension was his refusal to permit a Company security guard to search his lunch bucket.

When the claimant applied for unemployment compensation, the Office of Employment Security determined that he was ineligible by force of Section 402(e) of the Law. The referee disagreed with that determination, and awarded benefits. It was the referee's conclusion that the claimant had "good cause" for refusing to be searched. However, on a further appeal by the Company, the Board reversed the referee and denied the claim for benefits.

The incident that caused the claimant's suspension occurred on May 29, 1980, after he had completed his work shift that day and had started to leave the Company's premises. As the claimant and several other employees approached the exit gate, a plant security guard stationed there stopped the group and asked them to open their lunch buckets for inspection. The purpose of the inspection, or search, was to see if any

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

of the employees stopped were leaving with tools or other property belonging to the Company.

Upon being confronted by the guard, the claimant refused to open his lunch bucket, protesting that the Company had no right to subject him to such a search. The claimant then attempted to walk past the guard and out the gate; that attempt led to some degree of pushing and shoving between the two men. Finally, the guard took the claimant to the nearby gatehouse, to obtain from him information needed to report the incident. The claimant never did allow his lunch bucket to be searched that day, with the consequence being his suspension a few days later.

The Company's decision to conduct the May 29 search of employee lunch buckets was initially prompted by a report that day, from a plant official, that a Company drill was missing. However, before the end of the claimant's work shift that day, the drill had been found. That the tool had been recovered was known to the interested plant officials and security personnel, including the guard that was to later confront the claimant. Nevertheless, the involved plant officials decided to proceed with the bucket search as a "routine matter": because they had already made preparations to conduct a bucket search for the drill, and had not held a "routine" search in a long time.

Company witnesses admitted to the referee that, so far as they knew, the employer had never issued any written rule or notice concerning searches of employees or their possessions. Although the Company issued a manual of employee instructions, which had gone through several printings, that publication is entirely silent on the matter of searches. Equally silent on the question was the labor-management agreement in force between the claimant's union and the Company at the time of the incident here involved.

Despite the lack of any written plant rule on the subject of searches, the Company has, for several years, pursued a "practice" of conducting periodic, at-random searches of employee lunch buckets. Under the "practice," when a bucket search is ordered it is conducted at the plant exit gate, as the employees of a given shift are leaving work for the day and are actually on their own time. During the period that a search is in effect, a plant guard will ask each employee passing through the gate to open his or her lunch bucket, so that the guard can see whether any Company property is contained therein.

According to the Company's witnesses in the instant case, the "practice" of having random bucket searches is designed to "keep the employees honest," even when there is no specific belief that an acutal theft is being attempted. As for the search of May 29, 1980, the Company's evidence before the referee gave no indication that, at the time the search was ordered to proceed, the employer had any specific cause to believe that the claimant or any other worker was trying to depart with Company property.

At the time of the incident in question, the claimant had been employed by the Company for about 29 years. Although he himself had never, prior to May 29, 1980, been subjected to a bucket search, he was undeniably well aware of his employer's "practice" of having them. In telling the referee why he resisted the search of May 29, the claimant expressed the feeling that a search of his lunch bucket by the employer would have violated his human and constitutional rights, including his right of privacy. The referee found that the claimant's refusal to allow the search was motivated by a strong conviction that the search did violate his right of privacy. And, based on that finding, the referee concluded that the claimant had "good cause" for resisting the employer's search. It was

upon that reasoning that the referee exonerated the claimant from the charge of willful misconduct, and awarded him benefits.

The Board, in reversing the referee, determined that the Company's lunch bucket searches are a "reasonable exercise of the employer's prerogative." The Board also concluded that the claimant had failed to justify his resistance to the attempted search of his bucket. Regarding the latter conclusion, the Board held that the Company's reasonable interest in having the bucket searches outweighed the asserted infringement of the claimant's right of privacy. Thus, the Board concluded that the claimant was guilty of willful misconduct as a matter of law. However, in the process of reaching the above conclusions, the Board adopted the referee's finding as to the motivation for the claimant's defiant response to the search. The Board, as had the referee, made a specific factual finding that:

> The claimant refused to participate in the "lunch [bucket] search" because of his strong conviction that it was a violation of his human right to privacy.

The term "willful misconduct" has no statutory definition. However, the Supreme Court of Pennsylvania has defined the term as comprehending an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer. *McLean v. Unemployment Compensation Board of Review*, 476 Pa. 617, 383 A.2d 533 (1978); *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976).

It is well settled that an employee's direct refusal to comply with a request of his employer can constitute willful misconduct under Section 402(e) of the Law. *E.g., Semon v. Unemployment Compensation Board of Review*, 53 Pa. Commonwealth Ct. 501, 417 A.2d 1343 (1980); *Kresge v. Unemployment Compensation Board of Review*, 46 Pa. Commonwealth Ct. 78, 405 A.2d 1123 (1979). However, before we can decide whether such noncompliance amounts to willful misconduct in a particular case, we must evaluate not only the reasonableness of the employer's request under the circumstances, but also the employee's reason for noncompliance. If the employee's behavior was justifiable or reasonable under the circumstances, it cannot be considered willful misconduct. *McLean; Frumento*. In other words, if there was "good cause" for the employee's action, he cannot be deemed guilty of willful misconduct. *McLean*.

In an unemployment compensation case involving a charge of willful misconduct, the employer bears the burden of proving the charge. *E.g., LeGare v. Unemployment Compensation Board of Review*, Pa. , 444 A.2d 1151 (1982). But, if the claimant seeks to justify the behavior in issue, or to show that it was reasonable, he must bear the proof burden in that respect. *E.g., Devine v. Unemployment Compensation Board of Review*, 59 Pa. Commonwealth Ct. 318, 429 A.2d 1243 (1981); *Lake v. Unemployment Compensation Board of Review*, 48 Pa. Commonwealth Ct. 138, 409 A.2d 126 (1979); *Holomshek v. Unemployment Compensation Board of Review*, 39 Pa. Commonwealth Ct. 503, 395 A.2d 708 (1979).

Equipped with the foregoing legal principles, we now consider their application to the case at bar.

The Company certainly has a valid interest in trying to prevent its employees from departing the plant premises with Company property. It seems clear,

moreover, that the employer is entitled to pursue reasonable security measures to prevent or reduce the incidence of such thefts. In our view, the bucket searches that the Company conducts from time to time do not unduly burden the employees. According to the overall testimony in this case, the "routine" bucket searches are conducted only occasionally. And, when a "routine" search is in effect, it simply requires the departing employees to open their buckets or containers as they pass through the plant gate. When such a search is in effect, it is not directed at any particular person; rather, *every* employee going through the gate during that time is asked to comply. In sum, the bucket searches are infrequently conducted, objectively executed, and done with what would seem to be little inconvenience to the employees. As for the Company's randomness in ordering these end-of-shift searches, it is conceivable that the very uncertainty as to when a search will be held could serve to discourage employee larceny.

When we weigh the security interest the bucket searches are intended to serve, against the slight degree of inconvenience or intrusion they actually entail, we are drawn to the conclusion that the Company's bucket search "practice" is a reasonable one, at least on that scale of measurement.

Before this Court, the claimant seeks to justify his alleged misconduct by relying on the search and seizure provisions of the Fourth Amendment of the United States Constitution and Article I, Section 8, of the Pennsylvania Constitution. He asserts that the employer's attempt to search his lunch bucket violated the above constitutional provisions, and that he thus had a legal right to resist the search. Taking his position one step further, the claimant argues that for the state to deny him unemployment benefits because of the conduct in issue, would amount to state action

that deprives him of the rights guaranteed by the aforesaid constitutional provisions.

It is firmly settled that the Fourth Amendment of the United States Constitution applies only to the actions of governmental authorities, and is inapplicable to the conduct of private parties. *Walter v. United States,* 447 U.S. 649 (1980); *Burdeau v. McDowell,* 256 U.S. 465 (1921); *Commonwealth v. Borecky,* 277 Pa. Superior Ct. 244, 419 A.2d 753 (1980). The same is true of the search and seizure provision in the Pennsylvania Constitution. *Commonwealth v. Dingfelt,* 227 Pa. Superior Ct. 380, 323 A.2d 145 (1974); *see* Pa. Const. art I, §25. It follows, then, that the right the claimant seeks to establish against his employer, a private entity, is not a right that arises from the constitutional provisions the claimant relies on. Moreover, since the claimant's rights against *governmental* searches are not here involved, it cannot be argued validly that a denial of unemployment benefits, because of his resistance to his employer's search, will impair his constitutional rights relative to intrusions by the *government itself.*

True, there have been decisions which, based on specific guarantees in the Bill of Rights of the federal constitution, have invalidated a state's denial of unemployment compensation. For example, in *Sherbert v. Verner,* 374 U.S. 398 (1963), the United States Supreme Court held that the refusal of a Seventh-day Adventist to work on Saturdays, because it was her sabbath, could not be deemed a disqualifying refusal to accept suitable employment. The basis for the Court's decision in *Sherbert* was that a denial of unemployment benefits, because of the claimant's refusal to work on her sabbath, violated the freedom of religion specifically guaranteed by the Free Exercise Clause of the First Amendment. Recently, in *Thomas v. Review Board, Indiana Employment Security Divi-*

*sion,* 450 U.S. 707 (1981), the Supreme Court again applied the Free Exercise Clause to invalidate a denial of unemployment benefits.

In *Thomas,* the claimant had voluntarily terminated his employment after his employer transferred him to armaments production. The claimant was a Jehovah's Witness, and the tenets of his religion prohibited him from participating in the production of arms; for that reason he resigned from his job. The Indiana compensation authorities decided that the claimant's religious scruples did not provide "good cause" for quitting his job, and denied him benefits on that ground. The United States Supreme Court held that for the state to deny the claimant benefits, because he had honored his religious principles, violated his constitutionally guaranteed freedom of religion. The Court reasoned that a denial of benefits under such circumstances forces an employee to choose between his religion and his job, with the price of choosing the former being the loss of state benefits. The Court further reasoned that such a state-coerced choice would unduly burden an employee in the exercise of his religious beliefs.

Another instance of applying the First Amendment to invalidate a denial of unemployment benefits was our decision in *Wright v. Unemployment Compensation Board of Review,* 45 Pa. Commonwealth Ct. 117, 404 A.2d 792 (1979). That case involved the constitutional right of free speech. We held that the claimant's public criticism of his government employer, on matters of public interest, could not amount to disqualifying willful misconduct; because, the criticism was the kind of speech that is protected by the First Amendment.

In *Sherbert, Thomas* and *Wright,* respectively, the claimant's course of action represented conduct that is the subject of specific constitutional protection. The

Bill of Rights of the federal constitution, by virtue of the First Amendment, bars the government from prohibiting the free exercise of religion and from abridging the freedom of speech. Thus, those rights are ones that are constitutionally guarded against substantial governmental restraints on their exercise. And, as the above cases held, a state's denial of unemployment benefits because a person has exercised one of those rights is an impermissible restraint.

As noted already, the claimant in the instant case asserts that he has a legal right to be free of searches by his employer, a private party. The claimant also asserts that the right is one of constitutional dimensions. From the latter premise, he further argues that for the state to deny him benefits, because he sought to enforce the right, would impair a constitutionally guaranteed freedom. In sum, according to the claimant, his resistance to his employer's bucket search was constitutionally protected conduct.

However, neither the federal constitution nor our state constitution is, of itself, a source of substantive legal rights against searches by private parties. That is, a person's right to be free of such searches is not the subject of a guarantee in either constitution; at least not in the direct sense that the claimant argues. A person's right to be free of private searches of his property is one that arises, for the most part, from common law property rights.[2] It would seem, therefore, that the

---

[2] As observed, the claimant has also referred to his "right of privacy." The "right of privacy," in its constitutional sense, has been declared to be a penumbral emanation of the Fourth Amendment and other specific guarantees in the Bill of Rights of the federal constitution. *Griswold v. Connecticut*, 381 U.S. 479 (1965). However, what we have already said about the inapplicability of the Fourth Amendment to the conduct of private parties must also be said about the constitutional "right of privacy." Therefore, the only "right of privacy" the claimant can attempt to raise is the one that exists among a person's common law rights against private parties.

issue in the present case is one that really goes to the relationship between the claimant's general property rights, as to his lunch bucket, and his obligations to his employer. Put differently, the question is whether the claimant could, as against his employer under the circumstances of this case, assert an otherwise existent property right without forfeiting his eligibility for unemployment benefits.

Any legal relationship that a person voluntarily enters into can, and usually does, diminish some common law right he could otherwise exercise with impunity: be the right personal or proprietary. Virtually every legal relationship assumed by a person creates duties and obligations to the other party that are not owed to people outside the relationship. Such a relationship is that of employee and employer. An employee owes his employer, among other duties, a reasonable level of cooperation regarding matters that are important to the employer's interest. *See e.g., Petery v. Unemployment Compensation Board of Review*, 42 Pa. Commonwealth Ct. 464, 400 A.2d 1372 (1979); *Korol v. Unemployment Compensation Board of Review*, 35 Pa. Commonwealth Ct. 183, 384 A.2d 1377 (1978). Even where the cooperation requested does not relate to a matter about which the employer has promulgated an express rule, the employee's duty to cooperate can arise from an implied obligation to do so. *See, e.g., Semon, supra.*

Of course, an employee's implied obligation to cooperate with his employer does not abrogate all of the non-constitutional personal and proprietary rights upon which an employee could rely to justifiably withhold the action requested. Certainly, for example, an employee does not have an implied obligation to open his home to an employer search, or to stand on his head because the employer so requests. The extent to which the implied obligation to cooperate will be

deemed to prevail over an allegedly reserved common law right must, in effect, rest on a conclusion about the circumstantial reasonableness of the employer's request and its burdensomeness to the employee. Indeed, an employer's request cannot be deemed reasonable if it will unduly burden an employee; and as to such a request there can be no implied obligation to cooperate.

But if an employer's request can be deemed circumstantially reasonable, after considering the burden to the employee, then the employee has an implied obligation to cooperate. Although there might be practical reasons that can justify an employee's refusal to cooperate, such noncompliance cannot be predicated upon asserted common law personal and property rights. As to employer requests that are reasonable in the above sense, the employee has waived those rights as a basis for noncompliance; he waived them when he voluntarily assumed the legal relationship with his employer.

In this case, the claimant deliberately failed to cooperate with his employer by refusing to comply with a known, at-plant security measure designed, in its own way, to protect the employer's property. The measure was not one that was used on a frequent basis, and when resorted to, was not directed at any particular employee. The most that the security measure required of the claimant, as it did of other employees, was that he open his lunch bucket as he passed through the plant exit gate. When we compare the employer's interest in having the measure with the degree of burden to the employees, we must conclude that the employer's request for cooperation was circumstantially reasonable. That being so, the claimant had an implied obligation to cooperate. In an effort to justify his noncompliance, the claimant has relied on legal precepts that do not apply to the request the

employer made of him. Accordingly, the claimant has failed to demonstrate "good cause" for his refusal to comply.[3]

There remains one other issue for our consideration. The Board, with its almost limitless powers of fact-finding, determined, in effect, that the claimant *actually believed* he had a legal right to resist the Company's bucket search. We must consider whether that finding imputes to the claimant a state of mind that negates willful misconduct; even though the claimant has not raised the point in this appeal. Whether or not an employee's actions constitute willful misconduct is a question of law subject to judicial review. *E.g., McLean, supra.* Therefore, we must review the legal conclusion that the Board has drawn from its own findings. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977).

However sincere the claimant may have been in his perception of his legal rights, we must conclude that his mistake in that respect was not the kind that can be allowed to exonerate him and preserve his eligibility for unemployment benefits. His conduct was purely volitional, and disregardful of his employer's interest. There is nothing in this case to indicate that the claimant's beliefs about his legal rights were other than self-induced. If he wished to gamble on the accuracy of his personal jurisprudence, the Unemployment Compensation Fund should not be required to subsidize his misconception.

For the reasons set forth in this opinion, the order of Board denying benefits is affirmed.

---

[3] Although the incident here in issue occurred after the claimant's work shift was technically over, that fact does not prevent his behavior from being willful misconduct. *Nevel v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 6, 377 A.2d 1045 (1977).

134

ORDER

AND NOW, the 17th day of September, 1982, the order of the Unemployment Compensation Board of Review at Decision No. B-189375 is affirmed.

Judge MENCER did not participate in the decision in this case.