111 Pa. Commonwealth Ct. 604 (1987)
534 A.2d 592
Bruce L. Heins, Petitioner
v.
Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.
No. 3114 C.D. 1986.
Commonwealth Court of Pennsylvania.
Submitted on briefs September 24, 1987.
December 11, 1987.
*605 Submitted on briefs September 24, 1987, to Judges MacPHAIL and BARRY, and Senior Judge NARICK, sitting as a panel of three.
Barry W. Sawtelle, Lieberman & Rothstein, P.C., for petitioner.
James K. Bradley, Assistant Counsel, with him, Clifford F. Blaze, Deputy Chief Counsel, for respondent.
*606 OPINION BY SENIOR JUDGE NARICK, December 11, 1987:
Bruce L. Heins (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's determination and denied benefits to Claimant pursuant to Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second. Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e) (willful misconduct). In addition, the Board modified the referee's order in determining that Claimant received a non-fault overpayment subject to recoupment under Section 804(b) of the Law, 43 P.S. §874(b).
The Board made its own findings of fact which can be summarized as follows: The Claimant had been employed as a casual driver and dock worker by Carolina Freight Carrier Company (Employer) until his last day of work, May 27, 1986. As a casual employee, Claimant was considered on call and was assigned work on an as-needed basis. He worked an average of two days per week. On May 1, 1986, Claimant was informed that Employer was in the process of updating its files with regard to casual employees and that Claimant would need to complete several forms to be forwarded to the personnel office. Completion of said forms was a condition of continuing employment. Filling out these forms was necessitated by Employer's decision to handle personnel and payroll matters from the corporate offices in North Carolina rather than at the local terminal. Among the forms to be completed was a psychiatric profile pertaining to employee honesty (Reid test). Claimant reported to his job site to complete the paper work, but, after beginning the psychiatric test, refused to complete it, declaring that the questions offended him. Employer informed Claimant that his failure to take the test would ultimately mean Employer would be unable *607 to provide work for him because his employment file would not be complete. Claimant received two additional work assignments; however, upon transfer of his payroll and personnel records to North Carolina, Claimant was not called for further work assignments. The Board also found that Claimant was not laid off due to lack of work, but that he honestly believed that to be the case and, consequently, that he had so advised the Office of Employment Security. The Board thus determined that Claimant was liable for a non-fault overpayment.
On appeal here, Claimant raises only one argument, that his refusal to submit to the Reid test did not constitute willful misconduct. Although not phrased as such, Claimant's argument seems to be that he had good cause for refusing to take the examination because it was an unreasonably intrusive new condition of employment, it was an inaccurate and unreliable predictor of employee behavior, and it was implemented by Employer in a discriminatory manner. We shall examine these contentions keeping in mind that our scope of review of a Board order is limited to determining whether there has been a constitutional violation or an error of law, and whether the necessary findings of fact are supported by substantial evidence. Kirkwood v. Unemployment Compensation Board of Review, 106 Pa. Commonwealth Ct. 92, 525 A.2d 841 (1987).
Willful misconduct has been defined to encompass conduct in wanton and willful disregard of an employer's interests, a deliberate violation of an employer's rules, a disregard of the standards of behavior which an employer can rightfully expect of an employee, or negligence manifesting culpability, wrongful intent, evil design or intentional and substantial disregard of either an employer's interests or an employee's duties and obligations. White v. Unemployment Compensation Board of *608 Review, 69 Pa. Commonwealth Ct. 196, 450 A.2d 770 (1982). Whether certain actions constitute willful misconduct is a question of law and subject to our review. Id.
It is no accident that, in determining whether an employee's actions fall within the bounds of willful misconduct, there is a need to ascertain some link between the conduct and the job. Thus, a refusal to comply with an employer's directive can constitute willful misconduct. Semon v. Unemployment Compensation Board of Review, 53 Pa. Commonwealth Ct. 501, 417 A.2d 1343 (1980). Here, Claimant's actions constituted such a refusal. The relevant inquiry then becomes whether the refusal was justified. Phrased differently, we must determine if Claimant had good cause or a reasonable basis for his refusal. If he did, then he cannot be held to have committed willful misconduct. McLean v. Unemployment Compensation Board of Review, 476 Pa. 617, 383 A.2d 533 (1978). The employee bears the burden to demonstrate good cause for his actions. Simpson v. Unemployment Compensation Board of Review, 69 Pa. Commonwealth Ct. 120, 450 A.2d 305 (1982), cert. denied, 464 U.S. 822 (1983).
First, we believe that employee honesty is a genuine and job-related concern for an employer. Thus, an employer which seeks to assure itself that its employees are honest cannot be said to be acting in an unreasonable manner per se. Accordingly, in Simpson we upheld routine lunch bucket searches by an employer and denied a claimant unwilling to submit to such searches unemployment compensation benefits. We noted in Simpson that an employee's privacy rights must be weighed against an employer's legitimate desire to prevent theft. Here, Employer's reasons for giving the test were to attempt to ensure that its employees were honest. Claimant does not appear to challenge this motive. *609 He argues instead that the test was unreasonably intrusive and constituted a new condition of employment.
It is axiomatic that the Board is the ultimate finder of fact and determiner of credibility. Rodriquez v. Unemployment Compensation Board of Review, 48 Pa. Commonwealth Ct. 65, 408 A.2d 1191 (1979). Here, it found that Employer's request was reasonable and that Claimant lacked good cause for refusing to take the examination. Our review of the record discloses that there is substantial evidence to support these findings. Employer's witness testified that the test was given to all employees, casual and otherwise, and that it was but one factor utilized in assessing employee honesty. He further testified that Claimant had always been a desirable employee. Caselaw provides that this Court must examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all logical and reasonable inferences. White; Taylor v. Unemployment Compensation Board of Review, 474 Pa. 351, 378 A.2d 829 (1977). In so doing, we must conclude that at no point did Employer call Claimant's personal integrity into question nor is there any indication that the test was given to harass or embarrass Claimant. Accord, Simpson. Employer merely sought to have Claimant update his files to comply with personnel procedures.
Further, Claimant's testimony as to why he objected to the test is based substantially upon his own subjective beliefs and upon hearsay.[1] Thus, we find that in this *610 case, Claimant has met his burden to prove that the refusal was reasonable. And while it is apparently true that the test was not given to Claimant until approximately two years after he began his employment, there is no showing that he was singled out for the test or that other employees whose personnel records were being transferred were not subject to the same requirement.
Claimant next contends that the test was an inaccurate and unreliable predictor of employee behavior. Again, the only testimony on this point is Claimant's, which is comprised of his subjective personal beliefs and hearsay. See supra n. 1. In any event, the fact that the test may not have been of the highest reliability does not necessarily render Employer's request or decision to use it unreasonable.
Finally, Claimant contends that the test was implemented in a discriminatory fashion because it was given only to casual employees. This argument was not raised below and is therefore waived. Pa. R.A.P. 1551. Even if we viewed it as properly preserved, however, the testimony of Employer's witness is clearly to the contrary.[2]
*611 Having determined that the Board committed no error, we affirm its order.[3]

ORDER
AND NOW, this 11th day of December, 1987, the order of the Unemployment Compensation Board Review in the above-captioned matter is hereby affirmed.
NOTES
[1] The sum of Claimant's testimony on why he felt he had good cause for refusing to take the test is as follows:

QR: What sort of questions were on there, can you remember any of the questions?
AC: One of the questions was, I only answered three or four. What would you do if an employee was with you for 20 years and he stole $20 a week or something like that? But what really set my mind, a while back there was a program on television where they took several Catholic nuns and they took some first degree convicted murderers from Graterford and they gave them a test similar to this and the finding was that one of the nuns would not have been suitable for their employment and one of the first degree convicted murderers would have been. So having saw that that kind of me [sic] feel that it was inaccurate.
N.T. 12.
[2] The Employer's witness testified as follows:

QCL: You said this [test] was requested of all employees?
AEW: Yes.
QCL: Even current union members.
AEW: They had to have it to be on, that had to be part of the completion, everyone that is on our seniority board has taken that as a condition of their employment.
N.T. 10.
[3] We decline to adopt Claimant's argument that tests such as this are analogous to polygraphic examinations which frequently are implemented when an accusation has already been made and are employed to "ferret out the culprit."