Irene Kownacki, Appellant, *v.* Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania, Appellee.

Vivian E. Neubauer, Appellant, *v.* Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania, Appellee.

Pearlie J. Putnam, Appellant, *v.* Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania, Appellee.

Mary Hay, Appellant, *v.* Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania, Appellee.

Argued March 7, 1975, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*Lawrence L. Kinter*, with him *McNelis, Lucht & Kinter*, for appellants.

*Daniel R. Schuckers*, Assistant Attorney General, with him *Sydney Reuben*, Assistant Attorney General, and *Robert P. Kane*, Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, April 15, 1975:

Since these four unemployment compensation cases have substantially identical facts and are controlled by the same principles of law, they will be covered by this one opinion and order which will be entered to each term and number. These four cases were heard together by

the referee and by the hearing officer for the Board of Review.

At the time of the hearing, the four claimant-appellants, all women, ranged in age from 35 to 52 and in weight from 129 pounds to 150 pounds. They had been in the employ of their last employer for periods ranging from 7 to 13 years and all were paid at the same wage rate. They all had been advised that a reduction in the work force would eliminate their positions, but their seniority was such that there were several positions which they could take by "bumping." They declined to accept any of these positions for the following reasons which they stated individually to be:

Kownacki— "I cannot do any of these jobs."

Neubauer— "Don't feel I was physically able to perform the duties involved."

Putnam— "Unable to do heavy work required of job."

Hay— "I felt that all the jobs were to (sic) heavy for me. Sometimes we would have to lift 150 pounds."

The Bureau of Employment Security determined the claimant-appellants were eligible. On appeal, the referee reversed the Bureau and determined that the claimant-appellants were not eligible and denied benefits under Section 4(t) and 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P. L. (1937) 2897, *as amended,* 43 P.S. §§753(t) and 802(b)(1). Section 402(b)(1), 43 P.S. §802(b)(1), provides, in pertinent part:

"An employe shall be ineligible for compensation for any week—

. . . .

"(b)(1) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in 'employment' as defined in this act:

. . . and that in determining whether or not an employe has left his work voluntarily without cause of a necessitous and compelling nature, the department shall give consideration to the same factors, insofar as they are applicable, provided, with respect to the determination of suitable work under section four (t). . . ."

Section 4(t) of the Law, 43 P.S. §753(t), provides, in pertinent part:

"(t) 'Suitable work' means all work which the employe is capable of performing. In determining whether or not any work is suitable for an individual, the department shall consider the degree of risk involved to his health, safety, and morals, his physical fitness, prior training and experience, and distance of the available work from his residence. The department shall also consider among other factors the length of time he has been unemployed and the reasons therefor, the prospect of obtaining local work in his customary occupation, his previous earnings, the prevailing condition of the labor market generally and particularly in his usual trade or occupation, prevailing wage rates in his usual trade or occupation, and the permanency of his residence. . . ."

On appeal, having the benefit of the record of a hearing held before a hearing officer, the Board of Review affirmed the decision of the referee. We must affirm the Board of Review.

The referee's key findings, affirmed by the Board of Review, were:

"4. Each of the job opportunities involved certain physical exertion and the lifting of varying weights or, in some instances, the operation of hand or motorized trucks and the claimant, after observing the performance of the jobs and being familiar with the job duties elected not to exercise her bumping privileges to remain employed since she felt physically unable to perform the requirements of the jobs available.

. . . .

"6. Although the job opportunities which were available to the claimant have in the past been classified as 'male,' under the current union-management collective bargaining agreement jobs are no longer categorized as 'male' or 'female.'

"7. The claimant made no attempt to perform any of the offered job assignments and having elected not to exercise her bumping privileges was laid off following her last day due to the elimination of her counter-sorter job."

In his discussion, the referee observed:

"The record reveals that while the job opportunities available to the claimant in the instant case have been, in the past, classified as male employment, 'male'—'female' job designations have been removed with employees of either sex now having equal opportunities for work in any job classification.

"The Referee has carefully considered the record and while recognizing that certain physical exertion and lifting were involved in each of the job opportunities available to the claimant (the weight estimates in the testimony ranging from approximately 45 to, in some instances, approximately 250 pounds) all of the duties of each of the job assignments were not so obviously beyond the physical capacity of the claimant as to render them unsuitable work in the absence of some reasonable attempt upon the part of the claimant to perform.

"Since the claimant suffers no physical limitations and made no attempt to perform any of the job assignments available to her, she did not exhaust all reasonable efforts to maintain the employer-employee relationship and inasmuch as the record will not support a finding that the continuing work was unsuitable, either with respect to the required duties or the rate of pay therein, the claimant must be deemed to have voluntarily terminated her employment without

the necessitous and compelling cause required by Section 402 (b) (1) of the Law. Consequently benefits must be denied thereunder."

The job description and the testimony are not entirely clear on what lifting is required on which of the jobs; how often lifting is required; what the weights are; and whether more than one person is available to do the lifting separately or jointly. Indeed, it would appear that perhaps the position identified as second helper on the Lenox may only have been a requirement to lift objects weighing a maximum of 40 pounds. All of this serves to emphasize and reinforce the well-founded rule that unless the requirements of the job being offered are so obviously beyond the physical capabilities of the claimant as to involve an unreasonable risk of injury, then the claimant must make a reasonable effort before declaring he or she cannot perform the duties. None of the claimant-appellants had worked or attempted to work in any of these job assignments, although they had performed some of the duties involved in these jobs and observed others performing all of them.

It is appropriate to comment, as did the referee, that just prior to the situation here at issue, these offered positions had been classified as "male." Under its labor-management agreement, the classification as "male" was removed, thus making women eligible to apply for the jobs. In keeping with the current thought that women should be permitted to try out for working positions based on their individual ability and not on their sex, it would seem appropriate to accompany the right to try out with the duty to try out before anyone determines that each claimant is not able to perform. Indeed, the duty to try has been in our law for years.

"Without risk of injury the claimant could have given the offered employment a trial and could have acted thereafter in accordance with its effect upon her. Her election to remain idle in these circumstances necessarily reflects upon the good faith of her re-

fusal." *Suska Unemployment Compensation Case*, 166 Pa. Superior Ct. 293, 296-97, 70 A.2d 397, 399 (1950).

Claimant-appellants at the hearing before the hearing officer appointed by the Board of Review produced written statements of doctors to the effect:

Kownacki— "Will not permit her to lift 40 to 250 pounds many times during a work day."

Neubauer— "Is unable to lift 250 pounds."

Putnam— "May not lift above 25 pounds."

Hay— "Is not allowed to do lifting in excess of 20 pounds."

The doctors were not produced and the testimony was objected to as hearsay. Nevertheless, the testimony was admitted, but it would appear these statements were not accepted favorably, nor should they have been. For an able discussion of this and the other law involved in these cases, see the recent opinion of Judge BLATT in *Tollari v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 589, 309 A.2d 833 (1973), and Judge KRAMER'S opinion in *Eckenrod v. Unemployment Compensation Board of Review*, 15 Pa. Commonwealth Ct. 166, 325 A.2d 320 (1974). In *Eckenrod*, Judge KRAMER discusses and rejects doctors' letters written two months after the claimant left his employment. Both opinions amply cover the firmly established principle of law that this Court is bound by the findings of the Board of Review when, as here, they are supported by the record.

Accordingly, we enter the following

## ORDER

Now, April 15, 1975, the decision and order of the Unemployment Compensation Board of Review in the above entitled matters, dated May 15, 1974, affirming the decision of the referee and denying benefits to the claimants, is affirmed.