Westmoreland County Commissioners, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

314

Argued February 1, 1984, before Judges Williams, Jr., Barry and Colins, sitting as a panel of three.

*Alex E. Echard,* for petitioner.

No appearance for respondent.

*H. Keith Hauger,* with him, *Dennis D. Del Cotto,* for intervenor, Norwin Medical Center.

OPINION BY JUDGE WILLIAMS, JR., May 8, 1984:

The Commissioners of the County of Westmoreland (County) petition for review of the orders of the Unemployment Compensation Board of Review (Board) affirming the decisions of a referee granting benefits to ten former administrative employees (claimants)[1] of the Westmoreland County Employment and Training Administration.[2] The referee reversed the determinations of the Office of Employment Security (OES) which had denied benefits under the labor dispute[3] and willful misconduct[4] provisions of the Unemployment Compensation Law.

---

[1] Rita O. Remmel, Board Decision Number B-187903

| Betty W. Hamacher, | " | " | B-187913 |
| Richard D. Mahoney, | " | " | B-187914 |
| Joan E. Hebda, | " | " | B-187915 |
| Robert L. Brinker, | " | " | B-187916 |
| Leslie T. Strader, | " | " | B-187917 |
| MacArthur Doty, | " | " | B-187918 |
| Marilyn R. Coleman, | " | " | B-187919 |
| Arthur L. Colagrande, III, | " | " | B-187920 |
| Edward J. Warchol, | " | " | B-187921 |

[2] This was the agency which administered the County's participation in programs under the Comprehensive Employment and Training Act (CETA).

[3] Section 402(d) of the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(d), which provides that

An employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other

On January 1, 1980, County employees, who were members of the Service Employees International Union (SEIU), Local No. 585, initiated a work stoppage over negotiations for a new labor-management agreement. None of the claimants were union members and from January 1, 1980 through January 7, 1980, they reported to work.

On January 7, 1980, the County reassigned the claimants to fill positions at the County geriatric care facility, Westmoreland Manor (Manor) which were vacant due to the work stoppage. Each rejected the reassignment and was placed on administrative leave without pay. At a meeting on January 9, 1980, each claimant, except claimant Doty, was advised that reassignment had become mandatory and that refusal to accept would result in an indefinite suspension. Each refused and was suspended accordingly.[5]

---

premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.

[4] Section 402(e) of the Act, 43 P.S. §802(e), which provides that An employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act;

[5] Claimant Doty, who moved without notice to the employer, was not contacted about the January 9, 1980 meeting and was unaware that the reassignment had become mandatory. He also was unaware that his status had been changed from administrative leave without pay to indefinite suspension.

At all times relevant to this case, each of the claimants remained available to perform his or her usual job; however, the County would not permit any of the claimants to work after January 7, 1980, except as a replacement at the Manor.

The work stoppage ended on January 13, 1980 and the claimants' suspensions subsequently were converted to discharges.

The OES denied benefits to all of the claimants under Sections 402(d) and 402(e), ruling that the claimants' unemployment was due to a stoppage of work which existed because of a labor dispute, other than a lockout and due to being involuntarily separated for willful misconduct for the same compensable weeks. In *Gladieux Food Services, Inc. v. Unemployment Compensation Board of Review,* 479 Pa. 324, 329, 388 A.2d 678, 680 (1978), our Supreme Court held that "[u]nder the language of this section [§402(d)], the cessation of employment must occur because of a labor dispute. Thus, in instances where a work stoppage resulted from a cause other than a labor dispute, section 402(d) is inapplicable. . . ." In applying *Gladieux,* we have held that a claimant, who had been laid off prior to a work stoppage at the employer's place of business, could not be ineligible under Section 402 (d) even though she engaged in some picketing at the employer's premises because the causation of her unemployment was a lack of work. *Barger v. Unemployment Compensation Board of Review,* 46 Pa. Commonwealth Ct. 502, 406 A.2d 1191 (1979). Likewise in *Coleman v. Unemployment Compensation Board of Review,* 46 Pa. Commonwealth Ct. 295, 406 A.2d 259 (1979), we reversed a determination by the Board that a claimant, who had been receiving benefits while laid off, was rendered ineligible for further benefits after he assaulted the employer's personnel manager, an act of willful misconduct under Section 402(e). We

held Coleman to be eligible, under the Act's terms, until such time as it might be shown that he would have been recalled to work but for his act of willful misconduct. Consequently, there can be no doubt that the causation for the unemployment must be determined for each week for which benefits are claimed. In the instant case it is clear that the claimants could not be ineligible under both Sections 402(d) and 402(e) for the same week of unemployment.[6]

The first week of unemployment claimed by the claimants was the week ending January 12, 1980. On January 9, 1980, they were indefinitely suspended from their jobs, which were not affected by the work stoppage and which they were willing to continue, because they refused to accept reassignment to jobs which were vacant at the Manor. Under such circumstances, only Section 402(e) applies.[7]

The referee and the Board determined the claimants to be eligible under both sections; therefore, we need not review the Section 402(d) determinations.

Turning to the remaining question,[8] we must decide whether the claimants refusal to accept reassignment to the Manor constitutes willful misconduct.

It is well-settled that an employee's direct refusal to comply with a request of the employer can consti-

---

[6] This causation test also has been applied by the Superior Court. See Campbell v. Unemployment Compensation Board of Review. 175 Pa. Superior Ct. 592, 106 A.2d 687 (1954).

[7] Accordingly, the County's argument that the claimants should be held ineligible under the voluntary termination provisions of the Act, Section 402(b), 43 P.S. §802(b) is without merit. Also, even if the claimants' unemployment had been due to a work stoppage due to a labor dispute, there was no such work stoppage at their places of employment; therefore, they could not be held ineligible under Section 402(d). See Pinkas v. Unemployment Compensation Board of Review, 49 Pa. Commonwealth Ct. 510, 411 A.2d 845 (1980).

[8] The facts as found by the referee are undisputed. Under such circumstances, we need determine only if an error of law has been committed below.

tute willful misconduct. *Simpson v. Unemployment Compensation Board of Review,* 69 Pa. Commonwealth Ct. 120, 450 A.2d 305 (1982) ; U.S. *cert. denied,* U.S. , 78 L.Ed.2d 97 (1983). Whether an employee's actions constitute willful misconduct is a question of law subject to our review. *Id.* In order to answer this question, we must evaluate not only the reasonableness of the employer's request under the circumstances, but also the employee's reason for non-compliance. If the employee's behavior was justifiable or reasonable under the circumstances, it cannot be considered willful misconduct. Stated simply, if there was "good cause" for the employee's action, he cannot be held to have committed willful misconduct. *McLean v. Unemployment Compensation Board of Review,* 476 Pa. 617, 383 A.2d 533 (1978) ; *Simpson.*

The employer has the burden of establishing that an employee was discharged for willful misconduct, *Stauffer v. Unemployment Compensation Board of Review,* 71 Pa. Commonwealth Ct. 569, 455 A.2d 300 (1983) ; however, if a claimant attempts to establish good cause for not complying with the employer's request, that burden is on the claimant, *Simpson.*

The referee and the Board concluded that the claimants had good cause for their refusal to work at the Manor, because such jobs were available solely because of the labor dispute and because Section 4(t)[9] of the Act provides in pertinent part that "notwithstanding any other provisions of this subsection *no work shall be deemed suitable in which . . . the position offered is vacant, due directly to a strike, lockout, or other labor dispute. . . .*" (Emphasis added.)

The County contends that the application of Section 4(t) to Section 402(e) is contrary to legislative intent. According to the County, the characterization

---

[9] 43 P.S. §753(t).

of a position as being unsuitable work if vacant due to a strike, lockout or other labor dispute was intended only to maintain the Commonwealth in a position of neutrality between labor and management in labor disputes by preventing the Commonwealth from assisting employers to procure strike breakers from *outside* of the employer's organization. We do not agree with this narrow interpretation.

Such a theory might be plausible if Section 4(t) related *only* to Section 402(a) of the Act, dealing with offers of or referrals to work to unemployed individuals.[10] But, to accept this theory, would be to ignore the express provisions of Section 402(b) which require that when a claimant's eligibility for benefits is to be determined on the basis of a voluntary separation from employment, consideration must be given

---

[10] 43 P.S. §802(a) of the Act which provides that

An employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to failure, without good cause, either to apply for suitable work at such time and in such manner as the department may prescribe, or to accept suitable work when offered to him by the employment officer or by any employer, irrespective of whether or not such work is in "employment" as defined in this act: Provided, That such employer notifies the employment office of such offer within seven (7) days after the making thereof; however this subsection shall not cause a disqualification of a waiting week or benefits under the following circumstances: when work is offered by his employer and he is not required to accept the offer pursuant to the terms of the labor-management contract or agreement, or pursuant to an established employer plan, program or policy: Provided further, That a claimant shall not be disqualified for refusing suitable work when he is in training under section 236(a)(1) of the Trade Act of 1974.

In *Quaker Oats Company v. Unemployment Compensation Board of Review*, 65 Pa. Commonwealth Ct. 33, 442 A.2d 367 (1982), we held, under Section 402(a), that work available due to a labor dispute, which is offered to laid off employees of the employer is unsuitable as a matter of law.

"to the same factors, insofar as they are applicable, provided, with respect to the determination of suitable work under Section four(t)" in order to discern whether the claimant had cause of a necessitous and compelling nature for leaving work. Acceptance of the County's interpretation would also cause us to ignore our decisions which apply Section 402(b) to employees who refuse an offer of continued employment from their employers where their existing jobs are to be eliminated. *See e.g. Smith v. Unemployment Compensation Board of Review*, 61 Pa. Commonwealth Ct. 523, 434 A.2d 248 (1981) and *Kownacki v. Unemployment Compensation Board of Review*, 18 Pa. Commonwealth Ct. 309, 335 A.2d 868 (1975). Under such circumstances, we cannot agree that the Legislature intended to limit the applicability of the aforementioned language of Section 4(t) as argued by the County. Furthermore, we believe that our acceptance of the interpretation advanced by the County would violate our duty to interpret the benefits sections of the Act in a liberal and broad manner. *Penn Hills School District v. Unemployment Compensation Board of Review*, 496 Pa. 620, 437 A.2d 1213 (1981).

The parties have not cited us to any case law which is directly on point here, nor has our research found such precedent. In *Reinhart v. Unemployment Compensation Board of Review*, 49 Pa. Commonwealth Ct. 102, 410 A.2d 401 (1980), however, we affirmed a denial under Section 402(e) to a management employee who was employed by a psychiatric institute and clinic and who refused to cross a picket line established by striking union employees at the employer's facility or report to work for the duration of the labor dispute. Reinhart alleged that she was motivated by a fear for her personal safety, but the employer provided police protection on its grounds and at the picket lines and there were no incidents of personal harm to anyone

who crossed the picket line. *Reinhart* is distinguished from the case at bar by its facts. Reinhart refused to report to her regular job during the strike, while the claimants here were reassigned to jobs other than their regular jobs. Moreover, Reinhart's job was not vacant because of the strike. The jobs at the Manor to which the present claimants were assigned were open only because of the labor dispute. Therefore, we hold that *Reinhart* is not controlling.

Section 1921 of the Statutory Construction Act, 1 Pa. C. S. §1921, provides, in pertinent part:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all of its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

In applying these principles, we hold that because the Legislature has unambiguously declared that an employee may voluntarily terminate employment and remain eligible for unemployment compensation rather than accept reassignment to a position which is open due to a strike, lockout or other labor dispute, the same result must follow where an employee is involuntarily separated from employment for refusing to accept such an assignment. Therefore, we hold, that if an employee refuses to accept reassignment to a position which is available due directly to a strike, lockout or other labor dispute, such employee has good cause for so doing and such refusal cannot be held to constitute willful misconduct in connection with his work as a matter of law.

Accordingly, the orders of the Board in the cases under review must be affirmed.

## ORDER

AND NOW, this 8th day of May, 1984, the orders of the Unemployment Compensation Board of Review, Decision Numbers B-187903, B-187913, B-187914, B-187915, B-187916, B-187917, B-187918, B-187919, B-187920, B-187921, are affirmed.