503 A.2d 1122

Klapec Trucking Co., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs November 20, 1985, to President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BLATT, sitting as a panel of three.

*John A. Pillar,* with him, *Kevin W. Walsh, Pillar and Mulroy, P.C.,* for petitioner.

*Richard F. Faux,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, February 7, 1986:

Klapec Trucking Company (employer) petitions for review of the decision and order of the Unemployment Compensation Board of Review (Board) granting benefits to Charles T. Brant, citing Section 402(e) of the Unemployment Compensation Law (Act) (willful misconduct in connection with work).[1]

We consider this case for a second time, having ordered the Board on remand to make necessary findings of fact regarding the good cause argument advanced by Brant. *Brant v. Unemployment Compensation Board of Review,* 83 Pa. Commonwealth Ct. 373, 477 A.2d 596 (1984).

On remand the Board made the following pertinent findings:

2. Claimant and another employee were employed as a team and traveled throughout the states and on July 16, 1982 had just returned from California and at approximately 4:30 p.m. stopped at Electralloy to unload.

3. Claimant's co-worker was instructed that he and the claimant were to unload the truck, reload it for a Monday morning trip to Dayton, Ohio and then drive the truck from the Electralloy yard to the employer's yard.

4. Claimant and his co-worker each had 1/2 hour driving time left and time left on the 70 hours maximum working time; however, claimant or his co-worker did not mention any shortage of hours to the employer on June 16, 1982.

5. Federal regulations require that no motor carrier shall permit or require a driver used by it to drive for any period after having been

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

on duty 15 hours following 8 consecutive hours off duty.[2]

6. The claimant had been on duty 14 1/2 hours.

7. It would have taken two hours to unload and reload the truck and then 5 minutes to drive to the employer's yard.

8. The claimant and his co-worker drove the truck to the employer's yard without first unloading and reloading.

9. The claimant did not mention any shortage of hours in connection with his refusal when he spoke to the employer. The claimant was, however, aware of the shortage of hours when he refused to unload and reload the truck.

10. The claimant was discharged by the employer for refusing to load the truck for a Monday delivery.

The employer now presents for our consideration several arguments on behalf of its general proposition that the Board erred as a matter of law in granting benefits based on these findings. Of course, whether or not an employee's actions constitute willful misconduct is a question of law subject to review. *McLean v. Unemployment Compensation Board of Review,* 476 Pa. 617, 383 A.2d 533 (1978). And it is now well settled that an employee's direct refusal to comply with an employer directive can constitute willful misconduct. *Simpson v. Unemployment Compensation Board of Review,* 69 Pa. Commonwealth Ct. 120, 450 A.2d 305 (1982). The employer bears the burden

---

[2] The pertinent regulation provides as follows:

[N]o motor carrier shall permit or require any driver used by it to drive nor shall any such driver drive:

. . . .

(2) For any period after having been on duty 15 hours. following 8 consecutive hours off duty.

49 C.F.R. §395.3(a).

of proving willful misconduct; however, if an employee attempts to establish good cause for not complying with the employer's directive, that burden is on the employee. *Westmoreland County Commissioners v. Unemployment Compensation Board of Review,* 82 Pa. Commonwealth Ct. 313, 475 A.2d 170 (1984).

The scope of our review is dependent upon whether or not the burdened party prevailed below. Because the employer did not prevail before the Board, our review with regard to the employer's burden to establish the *prima facie* case of willful misconduct is to determine whether or not the Board's findings of fact are consistent with each other and with its conclusions of law and whether or not the Board's findings of fact were made in capricious disregard of competent evidence. *Bishop v. Unemployment Compensation Board of Review,* 90 Pa. Commonwealth Ct. 553, 496 A.2d 110 (1985). Conversely, with regard to Brant's burden to establish good cause, we are limited to determining whether or not the findings of fact are supported by substantial evidence and whether or not there has been an error of law. *Dulgerian v. Unemployment Compensation Board of Review,* 64 Pa. Commonwealth Ct. 342, 439 A.2d 1342 (1982).

In resolving these issues, we must evaluate not only the reasonableness of the employer's directive under the circumstances, but also the employee's reason for noncompliance. If the employee's behavior was justified or reasonable under the circumstances, it cannot be considered to have been willful misconduct. *McLean.*

Our reading of the above-listed findings reveals that, as the employer contends, at no time during his conversations with the employer regarding the order to unload and reload his truck on July 16, 1982, did Brant advise the employer that he was only one-half hour

from exceeding the fifteen hour on duty rule. In a prior case we held that an

> informative communication with the employer may be a factor in sustaining the employee's burden to establish good cause for a violation, and, in those situations, the employee, where feasible, must notify his employer of the reason for refusing to comply with rules, unless the reason for noncompliance is self-evident, or unless the employer is independently aware of the circumstances warranting noncompliance.

*Bortz v. Unemployment Compensation Board of Review*, 76 Pa. Commonwealth Ct. 436, 438, 464 A.2d 609, 610-11 (1983).

While the findings in this case do state that Brant had just completed a return trip from California, we also note that he was part of a driving team on that trip. Furthermore, we see nothing in the findings to directly or indirectly indicate that, absent advice from Brant, the employer had any way of knowing that, at the time these events occurred, Brant was nearing the fifteen hour time limit that day.[3]

---

[3] Although Mr. Klapec was attempting to prove that Brant and his driving partner were within the purview of another Department of Transportation regulation not pertinent here, 49 C.F.R. §395.3(b), we believe that the following excerpt from the employer's testimony underscores our reading of the findings of fact:

> QR: Did he have any driving time left under the 70 hours a week?
>
> AEW1: (Mr. Klapec) On this DOT the 15 hours I don't here doesn't apply I don't think because they are in the truck constantly, they can run four hours and be off four hours, one can drive four hours and the other one sleeps four hours and this goes on continuously and they have done this trip countless times, but this shows if you care to look at it, they have 12 1/2 hours or Swires [Brant's driving partner] had 12 1/2 hours left. Here is Mr. Brant's had 65 1/2 hours that week, so that left him 4 1/2 hours for the unloading and the loading.

Under such circumstances, we conclude that this case presents a situation where the employee was obliged to inform the employer of his reason for noncompliance and that his failure to do so not only vitiates what would otherwise have been good cause for noncompliance, *Bortz,* but also operates to remove the stain of unreasonableness from the employer's order. We hold, therefore, that the Board erred in granting benefits.[4]

QR: And that is under the 70 hours a week?

AEW1: That is under the 70 hour rule, so what we asked them to do and of course *we didn't know their time it is always a gamble,* there is plenty of time to go to California and back so that was no problem at the time as far as hours. *There was no hours mentioned,* their tummies were empty, that is all, they had ample, even Mr. Brant who shows more time, 4 1/2 hours had ample time to eat. . . .

\* \* \* \*

Subsequently, under cross-examination by Brant's counsel, Mr. Klapec testified:

QCL: Are you aware of how much driving time was available to these drivers on Friday?

AEW1: No on Friday I had no idea.

\* \* \* \*

Mr. Klapec also responded to further cross-examination as follows:

QCL: Now the only other concern I have is that you testified you wanted to go by the rules of the Department of Transportation, are you familiar with the ill or fatigued driver regulations?

AEW1: I am familiar with it. As a matter of fact we have a girl in the office checks logs and makes sure they don't go over their time etc. Of course we can't do anything about that until the logs come in.

QCL: Did you review the logs that Friday evening?

AEW1: Pardon?

QCL: Did you review the logs?

AEW1: How could I do that, they don't turn them in until after they come in. (Emphasis added.)

[4] Due to our ruling that Brant's failure to inform the employer of the time he had left under the 15 hour rule requires a reversal of the Board's legal conclusion, we need not address the employer's

Accordingly, we will reverse the decision and order of the Board.

## ORDER

AND NOW, this 7th day of February, 1986, the decision and order of the Unemployment Compensation Board of Review, Decision No. B-212571-A, is reversed and benefits are denied to Charles T. Brant.

---

other arguments. We must, however, respond to the Board's patently meritless argument that our decision in *Brant* foreclosed it from determining whether or not Brant's conduct constituted willful misconduct.

Relying on the following statement, the Board contends that the issue of willful misconduct was conclusively determined in *Brant*:

We have no doubt that an employe has not engaged in willful misconduct by disobeying an employer's instructions which would require contravention of Federal regulations.

*Id.* at 378, 477 A.2d 598. Such an argument misperceives the purpose and import of that statement. That language was not part of the holding in *Brant;* it was merely dicta. At most, it represented an observation by the Court that, should such circumstances be established factually, the legal conclusion would have to be that no willful misconduct existed. If, as the Board argues, we had conclusively determined the willful misconduct issue in *Brant* that would have ended the controversy and then our order remanding the case would have been meaningless.