# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael A. French, Sr., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 241 C.D. 2016 |
| | : | Submitted: January 27, 2017 |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE JOSEPH M. COSGROVE, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                                **FILED:  May 18, 2017**


Petitioner Michael A. French, Sr. (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board), dated January 12, 2016.  The Board reversed the Referee's grant of Claimant's unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law),[1] relating to voluntary separation

---

[1] Act of December 5, 1936, Second Ex.  Sess., P.L.  (1937) 2897, *as amended*, 43 P.S. § 802(b).

without cause of a necessitous and compelling nature.[2]  We affirm the Board's decision.

Claimant filed for unemployment compensation benefits after voluntarily quitting his position as a full-time hand printer for American Process Lettering (Employer).  The Duquesne Unemployment Compensation Service Center (Service Center) issued a Notice of Determination, finding Claimant ineligible for benefits under Section 402(b) of the Law.  (Certified Record (C.R.), Item No. 5.)  The Service Center reasoned that Claimant failed to meet his burden to prove a necessitous and compelling reason for quitting.  (*Id.*)  Claimant appealed the Service Center's determination, and a Referee conducted an evidentiary hearing.

Claimant testified that he suffered severe migraines as a result of a motor vehicle accident that happened on October 12, 2014.  (C.R., Item No. 9 at 4-5.)  To help keep his migraines under control, he wore sunglasses.  (*Id.* at 4.)

---

[2] Section 402(b) of the Law provides, in part, that a claimant shall be ineligible for compensation for any week in which the claimant's "unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature."  Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review.  *Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 661 (Pa. Cmwlth. 2006).  A claimant who voluntarily quits his employment "bears the burden of proving that necessitous and compelling reasons motivated that decision." *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999).  To establish cause of a necessitous and compelling nature, a claimant must establish that (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary common sense, and (4) the claimant made a reasonable effort to preserve his employment.  *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008).

2

He had a doctor's note to wear sunglasses. (*Id.*) He offered to show this note to Employer's President, Gary Huddell, in February of 2015. (*Id.* at 6.) He testified that Employer did not have an issue with him wearing sunglasses until August 21, 2015, when his immediate supervisor, Tom Weber, told Claimant to take off his sunglasses. (*Id.* at 5.) Claimant attempted to show the documentation to Mr. Weber. (*Id.* at 7.) Mr. Weber sent him home. (*Id.*) Before Claimant left, Mr. Weber told him that Employer would try and find another job that he could do. (*Id.* at 12.) After this incident, Claimant testified that he was sent home two additional times, and he believed he was fired after the third time. (*Id.* at 6.) Claimant further testified that Mr. Weber said on the last day that Employer was unable to find him work, but Mr. Weber requested that Claimant speak to the owners. (*Id.* at 13.)

Mr. Weber and Mr. Huddell testified on behalf of Employer. Mr. Weber testified that Claimant told him about his migraine headaches. (*Id.* at 9.) Mr. Weber told Claimant on August 21, 2015, that Claimant could either take off his sunglasses or go home. (*Id.* at 10.) Mr. Weber testified that he did not state that if Claimant did not remove his sunglasses, Claimant could no longer work for Employer. (*Id.*) On August 24, 2015, Claimant reported to work wearing sunglasses. (*Id.* at 10.) Mr. Weber told Claimant that Claimant could not work with sunglasses because the sunglasses were a safety hazard and created a quality assurance concern. (*Id.*) Mr. Weber asked to wear the sunglasses to determine if Claimant could properly see colors. (*Id.*) Mr. Weber determined that Claimant could not see colors properly while wearing the sunglasses. (*Id.*) Mr. Weber then sent Claimant home. (*Id.* at 11.) After Claimant left, Mr. Weber spoke to Mr. Huddell. (*Id.*) Mr. Weber and Mr. Huddell determined that Claimant could be

3

moved to his old position in the packaging department. (*Id.*) Mr. Weber testified that on August 25, 2015, Claimant reported to the office prior to Claimant's shift. (*Id.*) Claimant was agitated, and Mr. Weber tried to calm him down. (*Id.*) Mr. Weber told Claimant to wait for the owners to discuss what job Claimant could do. (*Id.* at 11-12.) Claimant left before the owners arrived. (*Id.* at 12.) Before Claimant left, Mr. Weber told Claimant that the owners would contact him in order to work something out. (*Id.*)

Mr. Huddell testified that when Claimant was first sent home, Mr. Huddell asked Mr. Weber to wear the sunglasses to determine if Claimant could properly perform the job. (*Id.* at 14). Mr. Huddell further testified that he discussed with Mr. Weber what other position would be suitable for Claimant while Claimant was wearing sunglasses. (*Id.*) After Claimant left on August 25, 2015, Mr. Huddell testified that he and Shelly Aguilera, the Accounting Human Resources Coordinator, contacted Claimant by email and telephone on the same day. (*Id.* at 15.) Mr. Huddell also testified that three days later, he sent a certified letter to Claimant that stated that Mr. Huddell assumed that Claimant was not returning to work. (*Id.*) Mr. Huddell stated that he wanted to help out Claimant and find another position that Claimant could do. (*Id.*) Mr. Huddell testified that he did not want Claimant to do printing work where he could not see the quality of the colors because of the sunglasses. (*Id.*)

Following the hearing, the Referee issued a decision and order, reversing the Service Center's determination. (C.R., Item No. 10.) The Referee determined that Claimant voluntarily terminated his employment for a necessitous and compelling reason. (*Id.*) The Referee explained that Claimant "had work

4

place restrictions as a result of a head injury which the Employer refused to immediately accommodate." (*Id.*)

Employer appealed to the Board, which reversed the Referee's decision and order. (C.R., Item No. 12.) In so doing, the Board made its own findings of fact and conclusions of law. The Board made the following findings of fact:

1. The claimant was last employed as a full-time hand printer by American Process Lettering from September 9, 2013, until August 25, 2015, at a final rate of $10.00 per hour.

2. The employer's hand printers use machines to screen print. The hand printer must be able to differentiate between colors, match colors, and check small details for quality assurance purposes.

3. Hand printers operate heavy machinery to perform their job.

4. In October 2014, the claimant was involved in a serious motor vehicle accident. The claimant sustained a serious head injury.

5. As a result of the head injury, the claimant suffered from severe migraines as a result of the accident.

6. The employer understood the claimant suffered from severe migraines as a result of the accident.

7. The claimant's doctor recommended that the claimant wear polarized sun glasses to minimize the glare of artificial light and reduce severity of the migraines when a migraine occurred.

8. In August 2015, the employer's plant manager observed the claimant operating screen printing machines while wearing sunglasses.

9. The claimant explained that he was wearing the sunglasses to reduce the severity of a migraine.

5

10. The plant manager tried the claimant's sunglasses on, and determined the polarized lenses affected the ability to differentiate between colors.

11. The plant manager discussed this with the owner, who believed wearing sunglasses could be a safety hazard and would affect the claimant's ability to differentiate between colors.

12. On August 21, 2015, the plant manager informed the claimant that he had to take his sunglasses off while working. The claimant refused to take the sunglasses off. The plant manager sent the claimant home.

13. The claimant obtained a doctor's note to wear sunglasses "at the time of these such migraines." The claimant did not give this note to the employer.

14. On August 24, 2015, the claimant was sent home because he wore his sunglasses while working.

15. On August 25, 2015, the claimant reported to work wearing sunglasses.

16. The plant manager advised the claimant that the owners wanted to find another position for the claimant, possibly in the packaging department, because it was not safe for him to wear sunglasses while operating printing machinery.

17. The plant manager asked the claimant to wait in the office until the owner arrived to discuss being reassigned.

18. The claimant left before discussing an alternative position with the employer.

19. The employer attempted to reach the claimant to discuss other positions that the [sic] claimant could perform while wearing the sunglasses, but the claimant did not respond to the employer.

20. The claimant voluntarily terminated his employment because he was not allowed to wear the sunglasses while working as a hand printer.

6

(*Id.*)  The Board reasoned that Claimant did not meet his burden to prove that he acted in good faith and made a reasonable effort to preserve his employment before quitting:

> The employer's plant manager and president credibly testified that they attempted to discuss other job opportunities with the claimant.  The employer's witnesses explained that they had other positions, such as one in the packaging department, where the claimant could have been reassigned to.  The employer's witnesses explained that the claimant could have performed those tasks while wearing his sunglasses because they did not require him to operate machinery, or differentiate between colors.  The employer's witnesses credibly testified that they tried to speak to the claimant about the other positions on August 25, 2015, but the claimant left before the owner came into work to discuss the problem.  The employer tried to contact the claimant at least four times after August 25, 2015, but the claimant did not return its calls.  The claimant acknowledged that he did not respond to the employer's attempts to contact him.  The claimant did not make a good faith effort to preserve his employment, or make a reasonable effort to continue working when the employer offered an alternative solution.

(*Id.*)  The Board, therefore, concluded that Claimant was ineligible for benefits under Section 402(b) of the Law.  Claimant now petitions this Court for review of the Board's order.

On appeal,[3] Claimant appears to contest the Board's decision in two ways.  First, Claimant essentially argues that the Board's finding of fact

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are
**(Footnote continued on next page…)**

number 16 is not supported by substantial evidence of record. Second, Claimant contends that the Board erred as a matter of law in concluding that he did not act in good faith by making a reasonable effort to preserve the employment relationship before quitting.

Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in a light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

In an unemployment compensation case, it is well-settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v.*

---

**(continued…)**

supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

8

*Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985). The Board is also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). "Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Peak*, 501 A.2d at 1388.

We first address Claimant's argument that the Board's finding of fact number 16 is not supported by substantial evidence. Claimant contests the Board's finding that the plant manager told him that Employer wanted to find another position for Claimant because it was not safe for him to wear sunglasses while operating the machinery. Specifically, Claimant contends that substantial evidence does not exist because the Board made contrary findings from the Referee. He states that Employer was aware of his "need for sunglasses since February which directly contradicts there [sic] assertion that the sunglasses came out all of a sudden, on August 21, 2015." (Petitioner's Br. at 8.) He further argues that if the owners decided to find an alternative position for him, he should have been sent to the packaging department directly instead of being asked to wait for the owners. (*Id.* at 10.)

Based on our review of Claimant's and Employer's testimony, we conclude that sufficient evidence exists to support the finding that the plant manager informed Claimant that the owners wanted to find him a different position, possibly in the packaging department, due to safety concerns relating to operating machinery while wearing sunglasses. Specifically, Mr. Weber testified as follows regarding his conversation with Claimant on August 25, 2015:

> I asked [Claimant] if he'd come to the front office, took
> him to the waiting room and said that the owners will be

9

in shortly. You can wait here, and we'll discuss this and see if we can work it out and find what job you can do. But I can't have you operate in that position. That's the instructions I was under. He left the building agitated. I informed him that I'd have the owners contact him, you know, to work something out. At no point in time did I terminate him, fire him, or tell him he was not employed there. He refused to wait for the owners to arrive.

(C.R., Item No. 9 at 11-12.) Claimant attempts to show that this finding is unsupported by substantial evidence merely by pointing to contrary evidence in the record—*i.e.,* his own testimony. The mere presence of conflicting evidence in the record is insufficient to show that a finding is not supported by substantial evidence. *See Verizon Pa., Inc. v. Workers' Comp. Appeal Bd. (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). Additionally, the Board, not the Referee, is the ultimate fact-finder in unemployment cases. *Peak*, 501 A.2d at 1388. As such, the Board is empowered to resolve the conflicts in evidence. It did so in Employer's favor.

Next, Claimant argues that the Board erred in concluding that he did not act in good faith to preserve his employment. We do not agree. An employee in Claimant's situation must take "reasonable steps to preserve the employment relationship." *Nolan v. Unemployment Comp. Bd. of Review*, 797 A.2d 1042, 1046 (Pa. Cmwlth. 2002). In order to be eligible for unemployment benefits, an employee is obligated to seek work with which his disability will not interfere. *Sankey v. Unemployment Comp. Bd. of Review*, 425 A.2d 52, 54 (Pa. 1981). An attempt must be made to perform the alternative work before becoming unemployed. *Kownacki v. Unemployment Comp. Bd. of Review*, 335 A.2d 868, 870 (Pa. 1975). Moreover, the burden is on a claimant who asserts a necessitous and compelling reason for quitting employment to show that the accommodations

10

offered by the employer are inadequate. *Taraschi v. Unemployment Comp. Bd. of Review*, 510 A.2d 400, 402 (Pa. Cmwlth. 1986).

Here, the Board concluded that Claimant did not make a good faith effort to preserve his employment or make a reasonable effort to continue working when Employer offered an alternative solution. The Board found that Mr. Weber and Mr. Huddell credibly testified that they attempted to discuss other job opportunities with Claimant, but that Claimant left before Mr. Huddell arrived. (C.R., Item No. 12 at 3.) Claimant admits that Mr. Weber told him on August 21, 2015, that Employer wanted to explore if other jobs were available. (C.R., Item No. 9 at 12.) The Board further found that Employer attempted to contact Claimant at least four times. (C.R., Item No. 12 at 4.) Employer testified that they attempted to contact Claimant the same day that he left by cell phone and email. (C.R., Item No. 9 at 15.) Three days later, Employer sent him a certified letter, informing him that since he had not returned to work, Employer assumed he did not intend to return to work. (*Id.*) These facts clearly demonstrate that Employer attempted to offer Claimant an alternative position, but that Claimant rebuffed those attempts. Because Claimant walked out before the meeting with the owners to discuss accommodating Claimant's condition, we conclude that Claimant did not make a good faith effort to preserve his employment. For these reasons, the Board did not err in concluding that Claimant did not meet his burden of proof under Section 402(b) of the Law.

Accordingly, we affirm the Board's order.

P. KEVIN BROBSON, Judge

Judge Cosgrove dissents.

11

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Michael A. French, Sr., :
                  Petitioner :
                   :
        v. : No. 241 C.D. 2016
                   :
Unemployment Compensation :
Board of Review, :
                Respondent :

# **O R D E R**

AND NOW, this 18th day of May, 2017, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge