IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert F. Spagna,                          :
                    Petitioner             :
                                           :    No.  1200 C.D. 2016
            v.                             :
                                           :    Submitted:  January 13, 2017
Unemployment Compensation                  :
Board of Review,                           :
                    Respondent             :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                    FILED:  May 25, 2017


            Robert Spagna (Claimant) petitions for review of the June 27, 2016,
order of the Unemployment Compensation Board of Review (Board) affirming a
referee's decision holding that Claimant was ineligible for benefits under Section
402(b) of the Unemployment Compensation Law (Law).[1]

---

[1] Section 402(b) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).  Section 402(b) of the Law provides that a claimant "shall be ineligible for compensation for any week. . . [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." *Id.*

## Facts and Procedural History

Claimant was a supervisor for Philadelphia Truck Lines (Employer), having begun employment with Employer on July 17, 2012. In 2014, Claimant was off work due to heart bypass surgery. (Board's Findings of Fact Nos. 1-2.)

Claimant returned to work with Employer on January 12, 2015, as a second shift warehouse supervisor. Employer accommodated Claimant's medical restrictions, which included no excessive use of steps, no standing for long periods of time, no working in extremes of weather, no lifting more than twenty pounds, and no working more than forty hours weekly. On January 13, 2016, Employer informed Claimant he would be working a different shift time, starting at midnight and ending at 8:00 a.m. ("third shift"), as opposed to Claimant's shift at the time, 8:00 p.m. to 4:00 a.m. ("second shift"). (Board's Findings of Fact Nos. 2-5.)

Claimant's job duties would not have changed if he had taken the move to third shift from second shift and his medical restrictions would continue to be accommodated. (Board's Findings of Fact Nos. 6, 7.)

"The [C]laimant had not presented the [E]mployer any medical documentation after July 2015 regarding whether his restrictions had changed, or whether he could not work third shift." (Board's Finding of Fact No. 8.)

"The employer," as found by the Board, "informed the claimant that if he did not agree to a change in schedule he could no longer continue working for the employer and the employer would consider him to have quit." (Board's Finding of Fact No. 9.)

Further, the Board found, "The claimant refused the shift change and quit his employment, alleging he could not work on third shift due to medical

2

restrictions. . . . The claimant did not attempt to work the third shift before ceasing to work for the employer." (Board's Findings of Fact Nos. 10-11.)

Claimant's last day of work was January 13, 2016, when he declined to attempt to work the third shift. Claimant filed a claim for benefits with the local service center, asserting, "They told me if I did not accept the shift change I had to quit. I told them I would not quit and they told me I was fired." (Record at Item No. 4.) The local service center determined that Claimant was ineligible for benefits under Section 402(e) of the Law, finding that "[t]here was insufficient information provided to indicate whether Claimant had good cause for his actions," which it deemed willful misconduct justifying a discharge by Employer. (Notice of Determination at 1.)

Claimant appealed and the case was assigned to a referee for a hearing.

Claimant testified that his medical restrictions and medications prevented him from working third shift, relying on doctors' statements from medical appointments from the preceding summer (or earlier). (Notes of Testimony (N.T.) at 6-9, 11, and Claimant's Exhibit 1.) Claimant submitted Exhibit 1, which consisted of a series of medical notes and handwritten scrips ranging from January 5, 2015, up to July 31, 2015, nearly six months before he ceased working. The January 5, 2015, scrip contained restrictions and read as follows: "To whom it may concern. Mr. Robert Spagna is cleared to go back to work on 1/12/15. He has been told not to work over 40 [hours] [illegible]. In addition, he has sleep apnea and should be on day shift." The other parts of the exhibit included office visits and notes, and contained a July 31, 2015, note which stated, "Follow up in six months. No excessive use of steps, no standing for long periods of time or working in extremes of weather, no lifting greater than 20 pounds, no working over 40 hrs/week. Get plenty

3

of rest." (Claimant's Exhibit 1.) Employer had no objection to admission of this exhibit. (N.T. at 11.)

Based on this release by his cardiologist in January of 2015, Claimant returned to work as supervisor on the second shift (8:00 p.m. to 4:00 a.m.). Claimant testified that on March 28, 2015, Employer sought to have him start working the third shift (midnight to 8:00 a.m.), but when Claimant cited health concerns, Employer filled the third shift with someone else. Claimant testified that after his release to return to work, he was supposed to follow up with his cardiologist every six months. Claimant saw his cardiac doctor after his last day of work. However, although this was prior to the referee's hearing, Claimant did not ask his doctor for any slip regarding current medical restrictions. (N.T. at 8-13.) According to Claimant, that was not important because, "Well, they knew about my limitations." (N.T. at 27-28.) When the referee asked Claimant specifically whether the workplace restrictions continued after the 2016 appointment with his cardiologist, Claimant replied that he did not bother asking for such a slip "because I wasn't working so there wasn't any reason. . . to give me a restriction." (N.T. at 8.)

When the referee asked the Employer whether Claimant could have continued working if he had accepted the shift change, the Employer answered affirmatively. (N.T. at 19.) Employer testified that the job duties would not have changed upon Claimant moving from second to third shift. (N.T. at 17-18.)

Following the hearing, the referee issued a decision and order dated April 1, 2016, finding Claimant ineligible for benefits under section 402(b) of the Law because she held Claimant to have voluntarily quit his job while lacking a reason of a necessitous and compelling nature. (Referee's Decision at 2.) Moreover, the referee held:

4

> Specifically, based on the claimant's own evidence, the restrictions in place were put there in July of 2015, and the claimant f[a]iled to offer any competent evidence as to what his specific restrictions were on or at the time he stopped working. Even if the Referee considered the claimant's restrictions as of July 2015 in considering whether the claimant had good cause for his failure to accept employer's shift change, nothing in the claimant's restrictions as presented prevent the claimant from changing his shift.

*Id.* at 2.

The referee also found that even if she had considered Claimant's eligibility under section 402(e) of the Law, dealing with willful misconduct, Claimant would remain ineligible because he "would not be able to establish that he had a good cause reason for failing to accept the employer's shift change on the same basis as his alleged medical restrictions and/or a lack of desire to work this certain shift." *Id.*

Claimant appealed to the Board, which affirmed in a decision and order dated June 27, 2016. Moreover, the Board found that Claimant's real objection to the change to third shift was "that he would not see his wife, [and] the change would disrupt his eating and sleeping habits, and would affect his medical restrictions." (Board's decision at 3.) At no point on January 13, 2016, did Claimant ever provide current medical documentation to support his allegations concerning any medical restrictions. The Board concluded that Claimant "was given a choice, i.e., change shifts or cease employment and [Claimant] chose not to remain employed." The Board found that Claimant had not met his burden of proving a compelling reason to quit. *Id.* at 2-3. Further, the Board did not "credit [C]laimant's testimony that he could not properly perform that job [third shift] as he provided no doctor's note to that effect." *Id.* at 3. The Board rejected Claimant's testimony that he would not be

able to perform the job duties of third shift as "speculation." *Id.* Accordingly, the Board determined that the proper focus was Section 402(b), dealing with voluntary quits, and not 402(e), dealing with willful misconduct, as the basis for finding Claimant ineligible for unemployment compensation benefits. *Id.* at 2.

Claimant filed a timely appeal to this Court.

On appeal to this Court,[2] Claimant argues that the Board erred because his separation was due to a necessitous and compelling reason. More specifically, Claimant argues that he adduced competent testimony that adequate health reasons existed to justify his resignation. Next, he argues that he showed that his continued work would have aggravated his existing medical condition. Finally, Claimant argues that he made a reasonable effort to maintain his employment. We disagree with Claimant's arguments.

**Discussion**

Section 402(b) of the Law provides that a claimant shall be ineligible for benefits for a period "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. §802(b). A claimant who voluntarily terminates employment has the burden to prove that a necessitous and compelling cause existed. *Petrill v. Unemployment Compensation Board of Review*, 883 A.2d 714, 716 (Pa. Cmwlth. 2005). An employee who claims to have left employment for a necessitous and compelling reason must prove that: (1)

---

[2] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether findings of fact are supported by substantial evidence. *Torres-Bobe v. Unemployment Compensation Board of Review*, 125 A.3d 122, 126 n.3 (Pa. Cmwlth. 2015).

6

circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve his or her employment. *Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006).

Moreover, Pennsylvania courts have been clear in their direction when a claimant seeks to establish health issues as a compelling reason to quit. Specifically, to prevail under Section 402(b), a claimant has the burden to "(1) offer competent testimony that adequate health reasons existed to justify the voluntary termination, (2) have informed the employer of the health problems and (3) be available to work if reasonable accommodations can be made." *Ann Kearney Astolfi DMD PC v. Unemployment Compensation Board of Review*, 995 A.2d 1286, 1290 (Pa. Cmwlth. (2010), citing, *Genetin v. Unemployment Compensation Board of Review*, 451 A.2d 1353, 1356 (Pa. 1982).

An employee who leaves work for medical reasons is rendered ineligible for benefits "if the employer provides alternative work which is compatible with the employee's disability." *Leonarczyk v. Unemployment Compensation Board of Review*, 397 A.2d 49, 50 (Pa. Cmwlth. 1979). Moreover, a claimant "must attempt to perform alternative work before becoming unemployed." *Id.* Finally, "unless the requirements of the job being offered are so obviously beyond the physical capabilities of the claimant as to involve an unreasonable risk of injury, then the claimant must make a reasonable effort before declaring he or she cannot perform the duties." *Id.*, citing *Kownacki v. Unemployment Compensation Board of Review*, 335 A.2d 868, 870 (Pa. Cmwlth. 1975).

In this case, Claimant quit without attempting to work the third shift as requested by Employer. The record reflects that Claimant provided two notes from his cardiologist for Employer. The January 5, 2015, note cleared Claimant for work, albeit limited to forty hours weekly and day shift only. However, beginning on January 12, 2015, Claimant worked the second shift, which encompassed the hours of 8:00 p.m. to 4:00 a.m. Claimant never complained that his second shift was inconsistent with his doctor's restrictions. Also, even though Claimant provided a note from his cardiologist dated July 31, 2015, it did not contain the restriction to day shift that had been noted in the January 5, 2015, scrip. Moreover, the Board found that the duties of the third shift were no different from the duties of the second shift. Although Claimant alleged that he was unable to work this shift due to medical restrictions, and introduced Claimant's Exhibit 1 at the referee hearing, which included a series of medical notes and handwritten scrips, there is nothing in the record to support Claimant's argument that he was unable to work a night shift, which involved the same duties as the second shift (8:00 p.m. to 4:00 a.m.) he had been working since he returned to work in January of 2015.[3]

---

[3] The dissent suggests that "it was Employer's burden to show that Claimant no longer had sleep apnea or that his sleep apnea did not prevent him from working the third shift." Assuming *arguendo* that Employer has the burden of disproving Claimant's problems with sleep apnea, Employer met that burden with undisputed evidence that Claimant worked the second shift (8:00 p.m. to 4:00 a.m.) without complaint or problem. It is important to look at the sequence of events. After Claimant first returned to work and provided Employer with the January 12, 2015, doctor's letter, he proceeded to work the second shift, also a night shift (from 8p.m. to 4 a.m.) without making any objection to Employer. Employer accommodated Claimant's medical restrictions, which included no excessive use of steps, no standing for long periods of time, no working in extremes of weather, no lifting of more than twenty pounds and no working more than forty hours weekly. Hence, Claimant was working, and continued to work a night shift even after submitting the January 12, 2015, note to Employer. Claimant never made any objection to working the night shift.

**(Footnote continued on next page…)**

Claimant failed to present any evidence of adequate health restrictions preventing him from working the third shift as of his last day of work, January 13, 2016, and the referee and Board found Claimant not credible concerning his ability to work third shift. (Board op. at 3.) The slips and scrips in Exhibit 1 addressed his medical condition and restrictions between January and July of 2015. Claimant had an appointment with his cardiac doctor between his last day of work and the date of the referee's hearing, yet specifically declined to even ask his physician for any note regarding his current medical restrictions.

Claimant did not make himself available for the work that was available from Employer for the third shift, which, as found by the referee and the Board, differed in no material respect from his prior work except it was "third shift" (midnight to 8:00 am) instead of "second shift" (8:00 pm to 4:00 am). Claimant

---

**(continued…)**

On March 28, 2015, Employer requested that Claimant work a different night shift, the third shift (12 midnight to 8 a.m.), instead of the second shift, with no change in job duties and a continuation of accommodating his medical restrictions. Claimant did not ask his doctor for another note saying he could not now work a night shift. Instead, Claimant merely voiced objection and refused to work the shift.

The Board found that Claimant's real objection to the change to third shift was "that he would not see his wife, and the change would disrupt his eating and sleeping habits, and affect his medical restrictions." The Board did not credit Claimant's testimony that he could not properly perform the third shift as he provided no doctor's note to that effect and the Board found that he did not meet his burden to prove he had a necessitous and compelling reason for leaving work. Moreover, when Claimant saw his doctor on July 31, 2015, the doctor's office notes did not contain any restrictions on working a night shift, even though the other medical restrictions, which Employer had accommodated, were still listed.

Clearly, there was not any inappropriate shifting by the Board of Employer's burden to rebut evidence of a reason of a necessitous and compelling nature,

made no effort to preserve his employment, and was not found credible by the Board. As such, Claimant did not meet his burden under Section 402(b) of proving that his voluntary resignation was for a reason that was necessitous and compelling.

Accordingly, the order of the Board is affirmed.


_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert F. Spagna, : 
         Petitioner : 
                            : No. 1200 C.D. 2016
         v. : 
                            : 
Unemployment Compensation : 
Board of Review, : 
         Respondent : 

## ***ORDER***

AND NOW, this 25th day of May, 2017, the order of the Unemployment Compensation Board of Review dated June 27, 2016, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert F. Spagna,                 :
                Petitioner     :
                              :
           v.               : No. 1200 C.D. 2016
                              : Submitted: January 13, 2017
Unemployment Compensation   :
Board of Review,                :
              Respondent   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**DISSENTING OPINION BY**
**SENIOR JUDGE COLINS**                            **FILED: May 25, 2017**

        I dissent. The acceptance of the note of January 12, 2015 that Robert F. Spagna (Petitioner) had sleep apnea and should be on the dayshift was unrefuted by the Philadelphia Truck Lines (Employer). Therefore, it was Employer's burden to show that Petitioner no longer had sleep apnea or that his sleep apnea did not prevent him from working the third shift. Employer is now the burdened party, and Employer did not introduce any evidence to show that there were changed circumstances.

                                           _____
                                           **JAMES GARDNER COLINS, Senior Judge**